UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
GARDEN CITY BOXING CLUB, INC.,
As Broadcast Licensee of the
September 18, 2004 De La Hoya/Hopkins
Program,

                              Plaintiff,

                  - against -                   REPORT AND
                                                         RECOMMENDATION
CARMEN BATISTA, Individually and as officer,
director, shareholder and/or principal of 3175          CV 2005-1044 (FB)(MDG)
FULTON RESTAURANT CORP. d/b/a EL GRAN
MAR DE PLATA a/k/a EL GRAND MAR DE
PLATA RESTAURANT, and 3175 FULTON
RESTAURANT CORP. d/b/a EL GRAN MAR DE
PLATA a/k/a EL GRAND MAR DE PLATA
RESTAURANT,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

TO: THE HONORABLE FREDERIC BLOCK:

       Plaintiff Garden City Boxing Club, Inc. ("plaintiff") brought this action under Title 47 of the United States Code alleging that Carmen Batista, individually and as officer, director, shareholder and/or principal of 3175 Fulton Restaurant Corp. d/b/a El Gran Mar de Plata a/k/a El Grand Mar de Plata Restaurant, and 3175 Fulton Restaurant Corp. d/b/a El Gran Mar de Plata a/k/a El Grand Mar de Plata Restaurant (collectively referred to as "defendants") violated sections 553 and 605 by intercepting and displaying to their customers, without plaintiff's authorization, a boxing match held on September 18, 2004. Complaint ("Compl.") (ct. doc. 1) at ¶¶ 1, 12, 15, 16.

After entry of default following defendants' failure to appear or otherwise defend in this action (ct. doc. 8), the plaintiff's motion for default judgment was referred to me for a report and recommendation on damages, costs and fees. Ct. doc. 9.

PERTINENT FACTS

The facts pertinent to determination of this motion are undisputed and are set forth in the complaint; the June 29, 2005 affidavit of Joseph Gagliardi, President of plaintiff ("Gagliardi Aff.") attached as attachment 1 to the Motion for Default Judgment ("the Motion") (ct. doc. 7); the June 30, 2005 affidavit of Julie Cohen Lonstein, Esq., counsel for plaintiff ("Lonstein Aff.") attached as attachment 6 to the Motion (ct. doc. 7); the September 27, 2004 affidavit of investigator James Picicci ("Picicci Aff.") attached as Exhibit C to the Gagliardi Aff. (ct. doc. 7); Plaintiff's Memorandum of Law ("Pl. Mem.") dated June 30, 2005 attached as attachment 8 to the Motion (ct. doc. 7); and Plaintiff's Authorities on Damages ("Pl. Auth.") dated August 11, 2005 (ct. doc. 11-1). Defendants did not file any opposing papers.

Plaintiff is a corporation organized and existing under the laws of the State of California, with its principal place of business located in Campbell, California. Compl. at ¶ 5. Defendant 3175 Fulton Restaurant Corp. is alleged to be a New York corporation or partnership or sole proprietorship with its principal place of business located at 3175 Fulton Street, Brooklyn, New York. Id. at ¶¶ 7-10. Defendant Carmen Batista resides in the State of New York. Id. at ¶ 6.

Plaintiff owns the rights to broadcast via closed-circuit television and satellite the championship boxing match between Oscar De La Hoya and Bernard Hopkins and all undercard bouts held on September 18, 2004 (the "boxing match"). Id. at ¶ 12; Gagliardi Aff. at ¶ 3, Exh. A. Plaintiff, in turn, entered into sublicense agreements with commercial establishments to show the boxing match, which was originated by satellite uplink and was retransmitted via cable transmission and encrypted satellite signal. Compl. at ¶¶ 12-14; Gagliardi Aff. at ¶ 3. In order

to receive and display the broadcast clearly, a viewer would need to use electronic decoding equipment or a satellite authorization code. Gagliardi Aff. at ¶ 10.

Defendants did not contract with plaintiff and thus were not authorized to receive and publish the boxing match. Id. at ¶ 6. As set forth in his affidavit, investigator James Picicci entered El Grand Mar de Plata Restaurant at approximately 9:55 p.m. on September 18, 2004 without paying a cover charge and observed the unauthorized public showing of the boxing match to 125 people. Picicci Aff. at 1-2. Investigator Picicci observed, inter alia, commentary by Emanuel Stewart and Jim Lampley, as well as microphones with the HBO PPV logo. Id. at 1.

Plaintiff served the corporate defendant 3175 Fulton Restaurant Corp. on March 15, 2005 by personally serving an officer of the corporation, defendant Carmen Batista, in accordance with Fed. R. Civ. P. 4(h)(1). Ct. doc. 4. On March 18, 2005, plaintiff served the individual defendant Carmen Batista personally. Ct. doc. 3.

Following defendants' failure to answer the complaint, plaintiff filed a motion for judgment by default on June 30, 2005. Ct. doc. 7.

DISCUSSION

I.  Legal Standards Governing Default

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. Greyhound, 973 F.2d at 159. The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." Id.

The court must ensure that there is a reasonable basis for the damages specified in a default judgment. Actual damages or statutory damages may be assessed. In determining damages not susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). The moving party is entitled to all reasonable inferences from the evidence it offers. Au Bon Pain, 653 F.2d at 65 (citing Trans World Airlines, Inc. v. Hughes, 308 F. Supp. 679, 683 (S.D.N.Y. 1969)).

II.  Determination of Damages

   A. Liability

Both sections 553 and 605 of Title 47 prohibit the unauthorized reception of cable programming. Section 553(a)(1) specifically applies only to cable transmissions and provides that, "[n]o person shall intercept or receive ... or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Section 605(a) generally provides that, "[n]o person not being authorized by the sender shall intercept any radio communication ... or assist in receiving any interstate or foreign communication by radio and use such communication for his own benefit or the benefit of another not entitled thereto." The Second Circuit in Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 130 (2nd Cir.), cert. denied sub nom Noel v. Int'l Cablevision, Inc., 519 U.S. 929 (1996)("Sykes II"), held that section 605 applies to "the interception of cable-borne, as well as over-the-air, pay television" where cable-borne transmissions originate as satellite transmissions. See also Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 435 (2d Cir. 2002). When certain television programming is transmitted

or intercepted over both cable and satellite mediums, both sections 553 and 605 apply. Id.

Plaintiff's submissions establish that defendants violated sections 553 and 605 of Title 47 by intercepting and receiving the boxing match without its authorization. Compl. at ¶¶ 15-16; Picicci Aff. at 1-2. Plaintiff had the right to distribute the boxing match, which originated via closed circuit television and via encrypted satellite signal. Compl. at ¶¶ 12-13; Gagliardi Aff. at ¶ 3, Exh. A. Investigator Picicci observed at El Grand Mar de Plata Restaurant, a business operated by Carmen Batista, the boxing match being displayed to patrons, even though defendants had not contracted with plaintiff to do so. Gagliardi Aff. at ¶ 6; Picicci Aff. at 1-2.

Consequently, this Court finds that defendants' unlicensed reception and exhibition of the transmissions violated sections 553 and 605 of Title 47.

### B. Damages

Plaintiff requests damages pursuant to section 605, rather than section 553. Gagliardi Aff. at wherefore clause; Pl. Mem. at 6-9.[1] Where a defendant is liable under both sections 553 and 605, the plaintiff is entitled to have damages awarded under section 605 because it provides greater recovery than does section 553. See Sykes II, 75 F.3d at 127; Entm't by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. CV-01-3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (recovery under both sections 553 and 605 is impermissible).

Section 605 allows plaintiff to elect to recover either actual damages and lost profits, or statutory damages. See 47 U.S.C. § 605(e)(3)(C)(i). Section 605(e)(3)(C)(i)(II) authorizes statutory damages of no less than $1,000 and no more than $10,000 for each violation of section 605(a). Moreover, section 605(e)(3)(C)(i)(II) vests the court with the discretion to determine the

---

[1] Plaintiff's Memorandum of Law does not contain a page "2" and thus the pages therein are incorrectly numbered.

amount of statutory damages, authorizing the court to award an amount "as the court considers just." See Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993); see also Joe Hand Promotions, Inc. v. Nekos, 18 F. Supp. 2d 214, 217 (N.D.N.Y. 1998) (the court has "discretion to adjust the amount awarded to the plaintiff").

In addition, section 605(e)(3)(C)(ii) vests the court with the discretion to increase the award of damages where "the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain." The court is authorized to award enhanced damages of up to $100,000 for each violation of willfulness.

In exercising such discretion, courts should be mindful of the difficulty in detecting such violations and the widespread problem of piracy. See Cablevision Sys. New York City Corp. v. Faschitti, No. 94 Civ. 6830 (DC), 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996); see also Sykes II, 75 F.3d at 132 (quoting legislative history). The court should therefore grant damages in an amount which achieves the deterrent purposes of the statute. See Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 113 (E.D.N.Y. 1997).

Plaintiff seeks to recover the maximum statutory damages in the amount of $10,000 and enhanced damages up to $100,000 for defendants' willful violation of section 605. Pl. Mem. at 6-9. Some courts, when presented with sufficient evidence indicating the number of patrons present at the time of the unauthorized programming, have employed a formula that multiplies that number by a dollar amount, usually based on the customary charge for the event in question. See, e.g., Mama Zee, 2002 WL 2022522, at *10 (awarding $50 per patron); Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999) (same); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (same). Other courts have simply assessed a flat damages amount per violation. See Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 U.S. Dist.

LEXIS 12159 (S.D.N.Y. June 30, 2004) (awarding $1,000 statutory damages and $1,500 enhanced damages for one-time exhibits of boxing match to about 20 customers); Garden City Boxing Club, Inc. v. Ayisah, 02 Civ. 6673, 2004 U.S. Dist. LEXIS 7867 (S.D.N.Y. Apr. 28, 2004) (awarding $3,000 statutory damages and $5,000 enhanced damages for one-time exhibit of boxing match to 60 customers); Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438 (S.D.N.Y. 2001) (awarding $5,000).

Recently, a number of judges in this district have awarded damages based on the number of patrons observed by the investigator or the capacity of an establishment multiplied by the residential fee for the pay-per-view broadcast. See, e.g., Garden City Boxing Club, Inc. v. Rosado, No. CV 05-1037, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005) (recommending statutory damages award of $989.10 based on $54.95 for each of the 19 patrons observed in the establishment); Garden City Boxing Club, Inc. v. Bello, No. CV-05-1300, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005) (recommending statutory damages based on same $54.95 residential rate for each of the 40 patrons who could have viewed the prize fight based on the establishment's capacity). Courts using the residential fee reason that this is the amount each patron would have paid to view the boxing match from home had he or she not had access to a broadcast at the establishment at issue. See Bello, 2005 WL 2496062, at *3. Plaintiff states that the "purchase of a pay-per-view broadcast for the event at the residential price" would cost $54.95. Gagliardi Aff. at ¶ 10(B).

Plaintiff has submitted evidence that at least 125 customers were present at El Grand Mar de Plata Restaurant when investigator Picicci observed defendants illegally displaying commentary by Emanuel Stewart and Jim Lampley prior to the boxing match between De La Hoya and Hopkins. Picicci Aff. at 1. Investigator Picicci estimated that this establishment could accommodate approximately 250 people. Id. The photographs of the exterior of the premises do

not reveal that advertisements concerning the match were posted nor did the investigator have to pay a cover charge before entering. Id. at 1, 3, 4. Rather than speculate as to whether or not additional customers may have entered the premises after investigator Picicci completed his investigation, I recommend that damages be based on the number of customers in defendants' establishment, rather than its total capacity, multiplied by $60, for damages of $7,500.

Further, I recommend that the Court award enhanced damages against defendants. A defendant who intercepts signals and broadcast programming without authorization "in a place of business where certain events are shown to the public" is generally held to have acted willfully and for purposes of commercial advantage. Am. Cablevision of Queens v. McGinn, 817 F. Supp. 317, 320 (E.D.N.Y. 1993) (citing Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350 (E.D.N.Y. Mar. 20, 1991)). Courts consider a variety of factors to determine whether a defendant's willful conduct warrants enhanced damages. These factors include: "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [and] defendant's charging a cover charge or charging premiums for food and drinks." Kingvision Pay-Per-View, Ltd. v. Recio, No. 02 Civ. 6583, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (internal citations omitted).

The undisputed facts presented by plaintiff in its complaint and the supporting affidavits clearly establish that El Grand Mar de Plata Restaurant is a commercial establishment that publicly displayed the De La Hoya/Hopkins boxing match to customers without authorization. Compl. ¶¶ 15-16; Picicci Aff. at 1-2. Plaintiff's submissions support the inference that on September 18, 2004, El Grand Mar de Plata Restaurant displayed the match for commercial gain in order to attract customers or retain customers who would purchase defendants' products. Significantly, defendant Batista has been sued for theft of cable programming in at least one

other action prior to the lawsuit in question. See Joe Hand Promotions, Inc. v. Frias, et al., 97-cv-05029 (FB)(CLP) filed on August 28, 1997.[2] Despite the prior lawsuit, defendants continued to pirate subsequent events on September 18, 2004, which is the subject of this action, and October 2, 2004.[3] Thus, I find that defendants willfully acted to intercept the match without plaintiff's authorization and recommend enhanced damages of $30,000 to deter future illegal conduct.

### C. Injunctive Relief

Plaintiff also seeks permanent injunctive relief against defendants pursuant to 47 U.S.C. § 605(e)(B)(i). Gagliardi Aff. at wherefore clause; Pl. Mem. at 9-11. However, Fed. R. Civ. P 54(c) provides that a judgment by default is limited to the relief demanded in the complaint. See Fed. R. Civ. P. 54(c) ("judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment"). The theory underlying this provision is that it would be unfair for the defendants to rely on the relief sought in the complaint in determining not to appear and then for the court to award a different kind of relief. See 10 Wright, Miller & Kane, Federal Practice & Procedure § 2663 (3d ed. 1998); In re Crazy Eddie Sec. Litig., 948 F. Supp. 1154 (E.D.N.Y. 1996) (discussing importance of notice even under liberal pleading rules). Here, since plaintiff's complaint does not demand injunctive relief, that type of relief cannot be awarded upon default. See SEC v. Wencke, 577 F.2d 619, 623 (9th Cir. 1978); Pacific Westeel, Inc. v. D & R Installation, No. 01 Civ. 0293, 2003 WL 22359512, at *2-

---

[2] This Court may take judicial notice of docket entries. See Schwartz v. Capital Liquidators, Inc., 984 F.2d 53, 54 (2d Cir. 1993); Mangiafico v. Blumenthal, 358 F. Supp. 2d 6, 9 (D. Conn. 2005).

[3] Defendants Batista and 3175 Fulton Restaurant Corp. defaulted and an entry of default was entered by the Clerk of the Court on April 11, 2005. On November 9, 2005, this Court entered judgment against defendants, jointly and severally, for a total damages award of $31,950. See 05-cv-00614 (JRD)(JMA).

3 (S.D.N.Y. Oct. 17, 2003) (limiting monetary damages to amount requested in complaint); Kingvision Pay-Per-View, Ltd. v. Arias, NO. C 99-3017 (SI), 2000 WL 20973, at *2 n. 5 (N.D. Cal. Jan. 07, 2000).

    D.    Attorneys' Fees

Plaintiff seeks to recover its attorneys' fees and costs totaling $2,030.00. Compl. at ¶¶ 21, 27, 33; Lonstein Aff. at ¶ 2.[4] Title 47 U.S.C. § 605(e)(3)(B)(iii) mandates that reasonable attorneys' fees and costs be awarded to a prevailing aggrieved party. Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993) ("Sykes I"). The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or the lodestar. Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1940 (1983); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989), cert. denied, 496 U.S. 905 (1990).

In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case. See Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985). If any expenditure of time was unreasonable, the court should exclude these hours from the lodestar calculation. See Hensley, 461 U.S. at 434; Lunday, 42 F.3d at 133. The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous

---

[4] The paragraphs in Julie Cohen Lonstein's Attorney Affidavit of Costs and Fees are incorrectly numbered. References to paragraph "2" in this report and recommendation are to the second paragraph "2."

time records.  New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

The reasonable hourly rates should be based on "the prevailing marketplace rates in the community for similar services by a lawyer of reasonably comparable skill, experience, and reputation."  Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994).  Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community.  Chambless, 885 F.2d at 1059.  The Court in Rotella found that "the prevalent market rate in this district is in the range of $200 to $250 for partners and between $100 and $200 for junior and senior associates."  Rotella v. Bd. of Educ. of City of New York, No. 01 CIV. 0434 (NGG), 2002 WL 59106, at *2-3 (E.D.N.Y. Jan. 17, 2002) (citations omitted) (finding that rate of lead counsel in a small firm of $225 per hour and rates of $135 and $100 per hour for junior counsel were reasonable); see also SEC v. Goren, 272 F. Supp. 2d 202, 207 (E.D.N.Y. 2003).  Rates in this district for paralegals range from $60 to $75.  Commission Express National, Inc. v. Rikhy, No. 03 CIV. 4050 (CPS), 2006 WL 385323, at *6 (E.D.N.Y. Feb. 17, 2006) (internal citations omitted).

Plaintiff seeks to recover $1,150.00 in attorneys' fees.  Lonstein Aff. at ¶¶ 2-3.  The amount of time spent by the attorneys and paralegals on work relating to the defaulting defendants and their billing rates are summarized below:

| Att./Para. | Time | Rate | Amount |
| --- | --- | --- | --- |
| Atty | 5.00 | $200.00 | $1,000.00 |
| Para | 2.00 | $75.00 | $150.00 |

**Total Fees:**            **$1,150.00**

Although the rate sought by plaintiff for attorney time may be reasonable, plaintiff fails

-11-

to provide any information identifying the attorneys who worked on this matter and the experience of the attorneys. The work may very well have been performed by an associate with only a few years' of experience since the boilerplate submissions were haphazardly assembled, as discussed below. If this is the case, I would find the $200 per hour rate unreasonable based on my knowledge of prevailing rates for such matters in New York. See Rotella, 2002 WL 59106, at *2-3; see generally, Googies Luncheonette, Inc., 77 F. Supp. 2d at 491.

Furthermore, this Court questions the accuracy of the amount of time claimed even though the time spent is not substantial. For example, plaintiff's counsel seeks compensation for 1.5 hours of work in drafting the complaint, the same amount that plaintiff's counsel has claimed in a large number of cases brought for the theft of programming, as observed by a number of my colleagues. Between December 6, 2004 and September 30, 2005, plaintiff filed at least 30 actions in this district against various commercial establishments for unauthorized display of the De La Hoya/Hopkins match.[5] In more than half of those cases, the defendants defaulted and plaintiff's counsel sought in the fees application compensation for 1.5 hours for drafting the complaint in all but two case.[6] While this Court understands the difficulty plaintiff may have in enforcing its licensing rights against widespread theft of programming and its desire to do so economically, the plaintiff has failed to meet its burden of providing sufficiently detailed records. See New York State Ass'n for Retarded Children, Inc., 711 F.2d at 1147-48.

---

[5] See CV04-5162; CV04-5409; CV05-0899; CV05-0938; CV05-0939; CV05-0940; CV05-0941; CV05-0942; CV05-0943; CV05-0944; CV05-0945; CV05-0946; CV05-1036; CV05-1037; CV05-1038; CV05-1039; CV05-1040; CV05-1041; CV05-1042; CV05-1043; CV05-1044; CV05-1045; CV05-1046; CV05-1047; CV05-1298; CV05-1299; CV05-1300; CV05-1663; CV05-1841; and CV05-4655.

[6] See CV05-0899; CV05-0943; CV05-0945; CV05-0946; CV05-1037; CV05-1038; CV05-1040; CV05-1041; CV05-1043; CV05-1044; CV05-1046; CV05-1047; CV05-1298; CV05-1299; CV05-1300; CV05-1841; CV05-4655; CV05-5409; but see CV05-1039 (one hour claimed) and CV05-1663 (2.5 hours claimed).

Moreover, after review of plaintiff's submissions in this case as well as the 29 other substantially similar cases listed in footnote 5, it is evident that Ms. Lonstein uses the same form and carelessly inserts case specific information.[7] Notwithstanding the potential efficiency of such an approach, this Court finds that plaintiff's claimed hours are excessive given the errors contained in the submissions which reflect, at best, minimal effort in preparation. See supra at n.1, 2 and 7. These are similar to the errors observed by the Court in another case that counsel filed alleging similar claims against the same defendant. See Kingvision v. Batista, No. CV 05-614 (RJD)(JMA), 2005 WL 2999427 at *6-7 (E.D.N.Y. Oct. 6, 2005).

In light of the insufficient information provided to support the rate claimed and doubt over the amount of time claimed, I recommend that plaintiff's request for fees be reduced by 40% for attorney time to $600, for a total fee award of $750, including paralegal time. See Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997) (permitting courts to make an across-the-board reduction in the amount of hours for unreasonable hours claims). Pursuant to section 605(e)(3)(B)(iii), plaintiff also seeks $880 in costs. In support of that request, plaintiff attests to the payment of $350 to the investigator for his services, although the invoice is for $450. Gagliardi Aff. at ¶ 9; supra fn. 7. In addition, plaintiff seeks reimbursement for filing fees of $250 and service of process fees in the amount of $180, which I find to be reasonable. Lonstein Aff. at ¶ 2.

This Court agrees with the reasoning of the Court in Kingvision Pay-Per-View, Ltd. v. Autar, 426 F. Supp. 2d 59, 65-67 (E.D.N.Y. 2006), that plaintiff is entitled to recover costs incurred for the investigator. As explained by Judge Townes, the "full costs" authorized under

---

[7] Ms. Lonstein's submissions are replete with factual errors and discrepancies, besides the misnumbering of pages and paragraphs discussed previously. For instance, investigator Picicci is referred to as "Piccini." Also, Plaintiff's Affidavit indicates that Signal Auditing, Inc. was paid $350 for its services, yet the attached invoice reflects a bill for $450. Furthermore, plaintiff states different dates for the De La Hoya/Hopkins boxing match.

section 605(e) should not be limited to taxable costs, particularly in light of the legislative history. Id.; see also Int'l Cablevision, Inc. v. Noel, 982 F. Supp. 904, 918 (W.D.N.Y. 1997) (acknowledging investigative fees recoverable as a cost under § 605); Video Aided Instruction, Inc. v. Y & S Express, Inc., No. 96 CV 518, 1996 WL 711513, at *6 (E.D.N.Y. Oct. 29, 1996) (awarding fees).

In order to recover investigative costs, plaintiff must make a showing similar to that required to recover attorneys' fees. Kingvision Pay-Per-View, Ltd. v. Autar, 426 F. Supp. 2d 59, 67 (E.D.N.Y. 2006) (citing International Cablevision, Inc. v. Noel, 982 F. Supp. 904, 918 (W.D.N.Y. 1997)). Therefore, plaintiff has the burden of producing documentation to support "(1) the amount of time necessary for the investigation; (2) how much the investigators charged per hour; [and] (3) why the investigators are qualified to demand the requested rate." Id. (internal quotations omitted).

However, plaintiff fails to provide any evidence of investigator Picicci's qualifications, his hourly rate, or the total time spent conducting his investigation to substantiate an award for investigative costs. Plaintiff's submissions suggest that Investigator Picicci devoted minimal time in his "investigation" of El Grand Mar de Plata Restaurant, staying only five minutes inside the restaurant on the day of the match to observe what was being displayed on the television, the layout of the establishment and the number of patrons. Picicci Aff. at 1-2. After exiting the establishment, he took two photographs of the exterior of the restaurant. Id. at 3-4.

Based on this Court's knowledge of costs claimed in other cases brought by plaintiff or similar cases brought by the same counsel for plaintiff, investigators hired by plaintiff (as well as other licensors of rights to certain programming broadcast via satellite) visit a number of places during the night that a particular boxing match is broadcast. For example, plaintiff filed affidavits from investigator Picicci in three other cases concerning the De La Hoya/Hopkins

-14-

match on September 18, 2004. See CV05-1046; CV05-1298; and CV05-1299. In these three cases and here, plaintiff submitted invoices from Signal Auditing, Inc. for investigative services in the amount of $450 even though investigator Picicci visited four different establishments between 9:32 p.m. and 10:55 p.m. on September 18, 2004. See CV05-1044 (ct. doc. 7); CV05-1046 (ct. doc. 25); CV05-1298 (ct. doc. 6); and CV05-1299 (ct. doc. 5).

For the reasons stated above, I find the $350 in investigative fees sought by plaintiff is excessive. I recommend that this Court award only $50 in investigative costs, a generous amount under the circumstances. See Maywalt v. Parker & Parsley Petroleum Co., 864 F. Supp. 1422, 1439 (S.D.N.Y. 1994) (approving $75 rate for investigators as within "the reasonable range of rates" paid in the district). To be sure, any other costs incurred by plaintiff for time spent by investigator Picicci investigating other persons on the same evening is not compensable in this action.

I thus recommend that the Court award costs of $250 for the Court's filing fee, $180 for service of process fees on defendants and $50 for investigative fees, for a total of $480 in costs.

### E. Post-Judgment Interest

Finally, plaintiff seeks post-judgment interest. See Pl. Mem. at 11. Of course, plaintiff is entitled to statutory post-judgment interest. See 28 U.S.C. § 1961(a) (2000).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that this Court award plaintiff $7,500 in statutory damages, $30,000 in enhanced damages, $750 in attorneys' fees and $480 in costs, for a total judgment of $38,730 against defendants, jointly and severally.

A copy of this report and recommendation is being filed electronically on this date and

sent via overnight delivery to defendants. Any objections must be filed with the Clerk of the Court, with a copy to the Honorable Frederic Block, the undersigned and the other party, on or before September 24, 2007. Failure to file timely objections may waive the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

**SO ORDERED.**

Dated:   Brooklyn, New York
         September 7, 2007

　　　　　　　　　　　　　　　　　　　　　　　　  /s/
　　　　　　　　　　　　　　　　　　　　　　　　MARILYN D. GO
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE